UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROBERT CYR,

      Petitioner,

v.                                Case No.   8:22-cv-2775-JLB-LSG

SECRETARY, DEPARTMENT OF
CORRECTIONS,

      Respondent.

_____/

## ORDER

Robert Cyr, a prisoner in the custody of the Florida Department of Corrections, petitions this Court for a writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 2.)   The Secretary of the Florida Department of Corrections ("Respondent") filed a response in opposition to the petition.   (Doc. 9.)   Cyr filed a reply.   (Doc. 13.)

Upon careful consideration of the pleadings, the state court record, and the entire file, the Court concludes that none of Cyr's claims entitles him to federal habeas relief.   Because the Court was able to resolve the petition on the record, an evidentiary hearing is not warranted.   See Schriro v. Landrigan, 550 U.S. 465, 474 (2007).

## I.    Background and Procedural History

On the evening of October 3, 2010, Cyr and his girlfriend, Jennifer Crawford, robbed a gas station convenience store in Hernando County, Florida.   (Doc. 10-1,

Ex. F, at 153, 155, 157, 162–64.)[1] While Crawford stood lookout outside, Cyr entered the store, pointed a shotgun at the cashier, and said, "This is a f*cking robbery." (Id. at 30, 160, 162–63.) Cyr was wearing a black ski mask and batting gloves. (Id. at 30, 45–46, 87.) When the cashier struggled to open the register, Cyr fired his shotgun at a cabinet. (Id. at 33.) The cashier placed approximately $90 in cash and several cartons of cigarettes in a black duffel bag. (Id. at 34–35, 161, 164.) Cyr and Crawford fled the scene in Crawford's Toyota Camry. (Id. at 158, 163.)

Six days later, Deputy Stephen Miller spotted Crawford's car, which was the subject of a be-on-the-lookout ("BOLO") report. (Id. at 71.) Cyr drove while Crawford sat in the front passenger seat. (Id. at 165.) After discovering that the car's tag had expired, Deputy Miller activated his emergency lights. (Id. at 73–74.) A chase ensued. (Id. at 74–75.) Cyr lost control of the car after running over police-deployed spike strips. (Id. at 75, 166.) When the car stopped, Cyr grabbed a shotgun and ran toward an elementary school. (Id. at 167, 171–72.) Officers apprehended Cyr near the school's entrance. (Id. at 96–97.) He was wearing batting gloves, and he had shotgun shells in his pocket. (Id. at 89, 98.) Officers later found the shotgun in nearby bushes. (Id. at 105.) Crawford was arrested outside her car, which contained a black duffel bag and a black ski mask. (Id. at 108, 115, 168.)

---

[1] Citations to the pages of exhibits relate to the page numbers on the original document, not the page numbers generated in the header by CM/ECF.

Two detectives interviewed Cyr at the police station.    (<u>Id.</u>, Ex. MM.)    He initially denied any involvement in the robbery.    (<u>Id.</u> at 24.)    After speaking to Crawford, however, Cyr confessed to robbing the convenience store.    (<u>Id.</u>, Ex. AA, at 277.)    He claimed that the gun "went off by accident," and that the cashier gave him "money" and "[c]igarettes."    (<u>Id.</u> at 277–78.)    Crawford allowed law enforcement to search the house she shared with Cyr.    (<u>Id.</u> at 144.)    There, officers found a long-sleeved Dickies shirt that matched the cashier's description of the robber's clothing.    (<u>Id.</u> at 136, 145, 160–61.)

Cyr was charged with one count of robbery with a firearm.    (<u>Id.</u>, Ex. A.)    The case went to trial.    (<u>Id.</u>, Ex. F.)    Crawford testified for the prosecution, providing a detailed account of Cyr's role in the robbery.    (<u>Id.</u> at 152–69.)    The cashier testified as well.    (<u>Id.</u> at 27.)    She could not identify the robber, but she claimed that several items recovered by law enforcement—the shotgun, the duffel bag, and the Dickies shirt—matched what she saw during the robbery.    (<u>Id.</u> at 32, 34, 38–40.)    The jury found Cyr guilty as charged, and the trial court sentenced him to life imprisonment as a habitual felony offender.    (<u>Id.</u>, Exs. G, J.)

After an unsuccessful direct appeal, Cyr moved for postconviction relief under Florida Rule of Criminal Procedure 3.850.    (<u>Id.</u>, Exs. R, V, Y.)    The postconviction court summarily denied some claims; the rest were denied after an evidentiary hearing.    (<u>Id.</u>, Exs. AA, CC, DD.)    The appellate court affirmed the denial of relief in an unexplained decision.    (<u>Id.</u>, Ex. HH.)    This federal habeas petition followed. (Doc. 2.)

## II.    Governing Legal Principles

### A.    The Antiterrorism and Effective Death Penalty Act ("AEDPA")

Under the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).   In this context, "clearly established federal law" consists of the governing legal principles, and not the dicta, set forth in the decisions of the United States Supreme Court at the time the state court issued its decision.   White v. Woodall, 572 U.S. 415, 420 (2014); Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)).

A decision is contrary to clearly established federal law if the state court either:   (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts.   Ward v. Hall, 592 F.3d 1144, 1155 (11th Cir. 2010); Mitchell v. Esparza, 540 U.S. 12, 16 (2003).   A decision involves an unreasonable application of clearly established law if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, Brown v. Payton, 544 U.S. 133, 134 (2005), or "if the state court either unreasonably extends a legal principle from

[Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000) (quoting Williams, 529 U.S. at 406).

The section 2254(d) standard is both mandatory and difficult to meet. To demonstrate entitlement to federal habeas relief, the petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." White, 572 U.S. at 420 (quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)). Moreover, when reviewing a claim under section 2254(d), a federal court must presume that any "determination of a factual issue made by a State court" is correct, and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e).

A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits, warranting deference. Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008). Generally, in the case of a silent affirmance, a federal habeas court will "look through" the unreasoned opinion and presume that the affirmance rests upon the specific reasons given by the last court to provide a reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 806 (1991); Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). However, the presumption that the appellate court relied on the same reasoning as the lower court can be rebutted "by evidence of, for instance, an alternative ground that was argued [by the state] or

that is clear in the record" showing an alternative likely basis for the silent affirmance.    <u>Sellers</u>, 138 S. Ct. at 1196.

**B.    Ineffective Assistance of Counsel**

In <u>Strickland v. Washington</u>, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance.    466 U.S. 668, 687–88 (1984).    A petitioner must establish that counsel's performance was deficient and fell below an objective standard of reasonableness <u>and</u> that the deficient performance prejudiced the defense.    <u>Id.</u>    A showing on only one prong will not support an ineffective assistance claim.    <u>Id.</u> at 687 ("Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.").

The focus of inquiry under <u>Strickland</u>'s performance prong is "reasonableness under prevailing professional norms."    <u>Id.</u> at 688.    In reviewing counsel's performance, a court must adhere to the presumption that "counsel's conduct falls within the wide range of reasonable professional assistance[.]"    <u>Id.</u> at 689 (citation omitted).    A court must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a highly deferential level of judicial scrutiny.    <u>Roe v. Flores-Ortega</u>, 528 U.S. 470, 477 (2000) (quoting <u>Strickland</u>, 466 U.S. at 690).    Proving <u>Strickland</u> prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."    <u>Strickland</u>, 466 U.S. at 687.

### C.    Exhaustion and Procedural Default

The AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless a petitioner has exhausted all means of available relief under state law.    28 U.S.C. § 2254(b)(1).    Exhaustion of state remedies requires that the state prisoner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights[.]"    Duncan v. Henry, 513 U.S. 364, 365 (1995).    The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim.    Snowden v. Singletary, 135 F.3d 732, 735–36 (11th Cir. 1998).    Under the similar doctrine of procedural default, "a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule."    Martinez v. Ryan, 566 U.S. 1, 9 (2012).

A petitioner can avoid the application of the exhaustion or procedural default rules by establishing objective cause for failing to properly raise the claim in state court and actual prejudice from the alleged constitutional violation.    Spencer v. Sec'y, Dep't of Corr., 609 F.3d 1170, 1179–80 (11th Cir. 2010).    To show cause, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court."    Wright v. Hopper, 169 F.3d 695, 703 (11th Cir. 1999).    To show prejudice, a petitioner must demonstrate a reasonable probability that the outcome of the proceeding would have differed.    Crawford v. Head, 311 F.3d 1288, 1327–28 (11th Cir. 2002).

A second exception, known as the "fundamental miscarriage of justice," only occurs in an extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent[.]"   <u>Murray v. Carrier</u>, 477 U.S. 478, 496 (1986).

## III.    Discussion

### A.    Ground One—Failure to Move to Suppress Confession

Cyr argues that trial counsel was ineffective for failing to move to suppress his confession.   (Doc. 2 at 15.)   According to Cyr, his confession was "involuntary" because he was experiencing "excruciating" back pain and was "denied medical treatment."   (<u>Id.</u> at 15–16.)   At several points during the interview, Cyr complained of back pain.   At the beginning of the interview, he said his back was "killing" him, explaining that he had injured his back "[t]hrough accidents and work."   (Doc. 10-1, Ex. AA, at 180.)   Later, he asked to go to the hospital because his back was "killing" him.   (<u>Id.</u> at 199.)   The detective said, "Well, let's finish up here and . . . we'll get you out of here, okay?"   (<u>Id.</u>)   Soon after, Cyr repeated that his back was "killing" him and "hurt[ ] so much."   (<u>Id.</u> at 230, 249.)   According to Cyr, counsel's "failure to file a motion to suppress deprived [him] of a fundamentally fair and reliable trial because it would have been granted and his statement excluded."   (Doc. 2 at 20.)

The postconviction court held an evidentiary hearing on this claim.   (Doc. 10-1, Ex. CC.)   Counsel testified that he watched "every minute" of the interview and "didn't see a basis for . . . suppression."   (<u>Id.</u> at 94, 125.)   He explained that he was not "aware of back pain being a legitimate basis to file a motion to suppress

someone's statements."   (Id. at 131–32.)   Moreover, counsel "didn't see anything [in the interview] where [he] felt that [Cyr's] physical limitations impacted what was happening."   (Id. at 137.)   Instead, Cyr "seemed very understanding" during the questioning.   (Id. at 136.)

Cyr presented testimony from Dr. Allison Lozicki, a pharmacist who reviewed a videotape of the interview and conducted a clinical evaluation of Cyr.   (Id. at 7–8, 19.)   Dr. Lozicki opined that during the interrogation, Cyr exhibited "signs and symptoms" "consistent with cognitive impairment."   (Id. at 45.)   She cited, among other things, Cyr's "slow rate of speech, slow response time, [and] inattention."   (Id. at 47.)   Dr. Lozicki acknowledged, however, that Cyr was "responsive to questions" and "persistent" in his requests to smoke a cigarette and speak with his girlfriend, Jennifer Crawford.   (Id. at 63–64, 66–67.)

The postconviction court ultimately rejected Cyr's ineffective assistance claim, finding no "deficiency on behalf of counsel" in failing to file a motion to suppress.   (Id., Ex. DD, at 3.)   The court acknowledged that Cyr "express[ed] during the interview that he [was] having back pain from a back injury sustained during accidents."   (Id. at 3–4.)   But the court held that Cyr's pain did not "rise[ ] to the level of physical impairment which would render his statements involuntary."   (Id. at 4.)   According to the court, Cyr was "responsive" "throughout the interview," and there was "no indication that his physical pain [was] coercive in nature."   (Id.)   As for Dr. Lozicki, the court "did not find [her] to be a compelling expert regarding the voluntariness of the confession."   (Id. at 3.)   Indeed, the court reasoned that

Dr. Lozicki "did not conclude that [Cyr's] degree of impairment rendered him incapable of making voluntary statements." (Id. at 4.)   Thus, the court found that counsel was not "deficient" because "grounds to move to suppress the statement did not exist[.]"   (Id.)

This ruling was reasonable.   "The pivotal question is whether the state court's application of the Strickland standard was unreasonable," which is "different from asking whether defense counsel's performance fell below Strickland's standard." Richter, 562 U.S. at 101.   Therefore, to prevail on his ineffective assistance claim, Cyr must "show that no reasonable jurist could find that his counsel's performance fell within the wide range of reasonable professional conduct." Franks v. GDCP Warden, 975 F.3d 1165, 1176 (11th Cir. 2020).   Cyr cannot make this showing.

"The determination of whether a confession is voluntary depends on whether, under all of the surrounding circumstances, the statement was the product of the accused's free and rational choice." United States v. Jones, 32 F.3d 1512, 1516 (11th Cir. 1994).   "A confession that was not the product of free will and rational[ ] intellect or that was made when the individual's will was overborne by physical, psychological, or drug-induced means, is inadmissible." Parker v. Allen, 565 F.3d 1258, 1280 (11th Cir. 2009).   A suspect's "pain" or cognitive impairment does not necessarily render his statement involuntary. United States v. Newman, 889 F.2d 88, 94 (6th Cir. 1989); United States v. Martinez-Perez, 625 F.2d 541, 543 (5th Cir. 1980).   Instead, the condition must "undermine[ ] his ability to comprehend in a

general way what he is doing and to communicate with coherence and context."

<u>Arvelo v. Sec'y, Fla. Dep't of Corr.</u>, 687 F. App'x 901, 906 (11th Cir. 2017).

A reasonable jurist could conclude that counsel had no basis to file a motion
to suppress because Cyr's confession was voluntary.   As noted above, Cyr
repeatedly complained of back pain during the interview.   (Doc. 10-1, Ex. AA, at
180, 199, 230, 249.)   Still, a competent attorney could have determined that Cyr's
pain was not "so great as to affect his ability to give a voluntary confession."

<u>Almon v. Jernigan</u>, 715 F.2d 1505, 1507–08 (11th Cir. 1983) (finding confession
"voluntary" despite "pain" petitioner suffered "due to the injury to his hand"
(internal quotation marks omitted)).   During the interview, Cyr communicated
clearly, answered questions coherently, and gave no indication that he did not
understand what was happening.   Indeed, before he admitted his involvement in
the robbery, Cyr repeatedly expressed skepticism about the evidence against him.
For example, he said, "[T]here's a million cars like it.   There's a million guns like
that.   There's a million shirts like that."   (Doc. 10-1, Ex. AA, at 220.)   On this
record, counsel could reasonably have concluded that Cyr "comprehend[ed] in a
general way what he [was] doing and [was able] to communicate with coherence and
context."   <u>Arvelo</u>, 687 F. App'x at 906.   Moreover, nothing in the record suggests
that Cyr's "will was overborne."   <u>Parker</u>, 565 F.3d at 1280.   To the contrary, Cyr
refused to provide a DNA sample, explaining that "there are some dirty cops out
there that just want to try and get somebody busted or just want to try to hang

somebody up on something so they got a case on somebody."   (Doc. 10-1, Ex. AA, at
197.)

 For all these reasons, a competent attorney could have concluded that Cyr's
confession was "the product of [his] free and rational choice."   <u>Jones</u>, 32 F.3d at
1516; <u>see also</u> <u>United States v. Short</u>, 947 F.2d 1445, 1450 (10th Cir. 1991) (finding
confession voluntary because defendant's "pain was not so great . . . that he was
unable to think and converse with the police freely and intelligently on several
subjects").   Thus, it was reasonable for the postconviction court to find that counsel
was not "deficient" because "grounds to move to suppress the statement did not
exist[ ]."[2]   (Doc. 10-1, Ex. DD, at 4.)

## B. Grounds Two and Three—Failure to Object to References to Other Robberies

 Cyr argues that trial counsel should have objected and moved for a mistrial
when the prosecution elicited testimony that allegedly "conveyed to the jury that
there was more than one robbery."   (Doc. 2 at 21, 25–26.)   The jury heard from
Deputy Michael Green, one of the officers who pursued Cyr six days after the gas
station robbery.   (Doc. 10-1, Ex. F, at 85–86.)   Deputy Green explained that he
learned of the robbery through "BOLOs" "alerting deputies that there were these
types of robberies going on, as well as distributing pictures of the possible suspect."
(<u>Id.</u> at 84.)   The jury also heard from Jennifer Crawford, Cyr's girlfriend and co-

---

[2] To the extent that Cyr argues he was "under the influence of medication" during
the interview, (Doc. 2 at 17), the postconviction court reasonably concluded that his alleged
intoxication did not support suppression because he was "speaking clearly and [was] not
muttering or incoherent."   (Doc. 10-1, Ex. AA, at 100.)

defendant.    (Id. at 153.)    Crawford testified that Cyr "talked about" committing a robbery "after [they] were together for a while."    (Id. at 154.)    According to Crawford, Cyr "mentioned robbing somewhere, here and there; that he had done it before."    (Id.)    Asked whether she "[took] him seriously," Crawford replied, "No." (Id.)

Cyr argues that both Deputy Green and Crawford suggested that he "was involved in multiple armed robberies."    (Doc. 2 at 21, 26.)    In Cyr's view, this testimony was "highly prejudicial."    (Id. at 24.)    Cyr contends that counsel's "failure to object or otherwise seek to exclude any reference to testimony that [could] be construed as discussing other robberies rendered counsel ineffective under Strickland."    (Id. at 21.)

Cyr correctly concedes that Grounds Two and Three are procedurally defaulted because he failed to raise them in state court.    (Id. at 22, 26.)    This means he cannot obtain relief "unless [he] can demonstrate cause for the default and actual prejudice, or that he is actually innocent."    Gore v. Crews, 720 F.3d 811, 816 (11th Cir. 2013).    Cyr seeks to excuse the default under Martinez v. Ryan, 566 U.S. 1 (2012).    Martinez held that a petitioner may establish cause for the default of a claim of ineffective assistance of trial counsel where (1) "in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective," and (2) the defaulted claim is a "substantial one," meaning that "the claim has some merit."    566 U.S. at 14, 17.    A petitioner shows that his defaulted claim is "substantial" under Martinez by demonstrating that "reasonable jurists

would find it debatable whether the petition states a valid claim of the denial of a constitutional right." Clark v. Comm'r, Ala. Dep't of Corr., 988 F.3d 1326, 1331 (11th Cir. 2021) (internal quotation marks omitted).

Martinez does not excuse the default because Cyr's ineffective assistance claims are not "substantial." Martinez, 566 U.S. at 14. Specifically, Cyr cannot show that he suffered prejudice from the references to other robberies. "The prejudice prong requires the petitioner to establish a reasonable probability that, but for counsel's errors, the outcome at trial would have been different." Reed v. Sec'y, Fla. Dep't of Corr., 767 F.3d 1252, 1261 (11th Cir. 2014). "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding." Strickland, 466 U.S. at 693. Instead, "counsel's errors [must be] so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable." Id. at 687.

Cyr has not met this standard. First, even apart from the other robberies, the prosecution presented "substantial evidence" of Cyr's guilt. Fugate v. Head, 261 F.3d 1206, 1224 (11th Cir. 2001); see also McCoy v. Newsome, 953 F.2d 1252, 1262 (11th Cir. 1992) ("[T]he other substantial evidence of [petitioner's] guilt negates any possibility of prejudice resulting from his attorney's [allegedly deficient performance].") . Cyr confessed to the robbery, and Crawford—his girlfriend and co-defendant—provided a detailed account of his role in the crime. (Doc. 10-2, Ex. F, at 152–69; Ex. AA, at 277–78.) Several pieces of evidence corroborated these admissions. Approximately one week after the robbery, Cyr led police on a chase

that ended with his apprehension near an elementary school.    (Id., Ex. F, at 73–97.)    Officers at the scene recovered a shotgun and a black duffel bag.    (Id. at 98, 105, 108.)    Police later found a long-sleeved Dickies shirt at the house where Cyr stayed.    (Id. at 136, 145.)    The victim testified that these items matched what she saw during the robbery.    (Id. at 32, 34, 38–40.)    Given the strength of the prosecution's case against Cyr, he has failed to show the requisite prejudice from the failure to object to the challenged testimony.    See Bates v. Sec'y, Fla. Dep't of Corr., 768 F.3d 1278, 1300 n.9 (11th Cir. 2014) ("The overwhelming evidence of [petitioner's] guilt . . . makes it obvious that [he] cannot show Strickland prejudice.").

Second, the references to other robberies were vague and fleeting.    Neither Deputy Green nor Crawford provided any details about the other robberies. Indeed, Crawford said that she did not "take [Cyr] seriously" when he said he had robbed someone before.    (Doc. 10-1, Ex. F, at 154.)    Moreover, during opening and closing arguments, the prosecution did not suggest that Cyr committed additional robberies.    (Id. at 14–20, 236–48, 280–91.)    In these circumstances, Cyr cannot show "a reasonable probability that, but for counsel's [failure to object], the outcome at trial would have been different."[3]    Reed, 767 F.3d at 1261; see also Hartlove v. Sec'y, Dep't of Corr., No. 8:21-cv-1171-CEH-SPF, 2024 WL 4607040, at *19 (M.D.

---

[3] For the same reasons—the overwhelming evidence of Cyr's guilt and the fleeting nature of the challenged testimony—there is no reasonable probability that a mistrial would have been granted had counsel sought one.    See Shermer v. State, 16 So. 3d 261, 267 (Fla. 4th DCA 2009) ("The overwhelming evidence of guilt suggests that this slight reference by the state during the testimony of the witness did not warrant a mistrial.").

Fla. Oct. 29, 2024) (state court reasonably found no prejudice from "brief, isolated

references" to uncharged conduct); <u>Morgan v. Jackson</u>, No. 06-cv-13947, 2009 WL

3190697, at *12 (E.D. Mich. Sept. 29, 2009) (no prejudice from failure to object to

"uncharged acts" because "[t]he references to inadmissible evidence were relatively

few, were not detailed, and were not relied upon by the prosecution to make a

character or propensity argument").

    **C.**    **Grounds Four and Nine—Allegedly False BOLO Testimony**

    Cyr argues that trial counsel should have objected to "false" testimony about

the BOLO for a silver or gray Toyota Camry, the car Cyr drove to the robbery.

(Doc. 2 at 30–31.)   Deputy Stephen Miller, the officer who spotted the car, testified

that he received a BOLO for "a silver or gray . . . Toyota Camry, four door," with a

"missing . . . right front hubcap."   (Doc. 10-1, Ex. F, at 70.)   During closing

argument, the prosecution said that "Deputy Miller sat here and testified that there

was a BOLO for that car for this robbery."   (<u>Id.</u> at 243.)   According to Cyr, these

statements were "misleading" because the BOLO was not issued for the robbery in

this case.   (Doc. 2 at 31, 51.)   Instead, the BOLO "stemmed from other robberies"

that Cyr allegedly committed around the same time.   (<u>Id.</u> at 51.)   To support this

assertion, Cyr notes that the victim of the charged robbery claimed to see a "small

white car" "fleeing at a high rate of speed."   (Doc. 10-1, Ex. F, at 57–58; <u>see also</u>

Doc. 2 at 30.)   Thus, Cyr argues, the BOLO must have been "based on the vehicle

being spotted in [the] other robberies."   (Doc. 2 at 51.)

    According to Cyr, trial counsel was ineffective for failing to object to "this

improper BOLO evidence."   (<u>Id.</u> at 30.)   Relatedly, Cyr contends that the

prosecution violated <u>Giglio v. United States</u>, 405 U.S. 150 (1972), by falsely "asserting that a BOLO was issued for a silver Toyota Camry in connection with" the robbery in this case.   (Doc. 13 at 17.)   Cyr is not entitled to relief on either claim.

As Cyr correctly acknowledges, his ineffective assistance claim is procedurally defaulted because he failed to raise it in state court.   (Doc. 2 at 30.) Once again, Cyr argues that <u>Martinez</u> excuses the default because the underlying claim is "substantial."   (<u>Id.</u>)   The Court disagrees.   Cyr cannot show prejudice— that is, a "reasonable probability" that, but for the allegedly false BOLO evidence, "the outcome at trial would have been different."   <u>Reed</u>, 767 F.3d at 1261.   The prejudice prong requires a court to "consider the totality of the evidence before the . . . jury."   <u>Strickland</u>, 466 U.S. at 695.   "Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect."   <u>Id.</u> at 695– 96.   "[A] verdict . . . only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support."   <u>Id.</u> at 696.

Cyr cannot show prejudice because, even apart from the allegedly improper BOLO testimony, "[t]he evidence against [him] was overwhelming."   <u>Green v. Sec'y, Fla. Dep't of Corr.</u>, 436 F. App'x 918, 922 (11th Cir. 2011).   That evidence included Cyr's videotaped confession, Crawford's detailed account of Cyr's role in the robbery, and the physical evidence linking Cyr to the crime.   (Doc. 10-2, Ex. F, at 32, 34, 38– 40, 152–69; Ex. AA, at 277–78.)   Given the strength of the prosecution's case

against Cyr, the BOLO evidence "had an isolated, trivial effect" on "the entire evidentiary picture." Strickland, 466 U.S. at 696. Thus, even if the jury had not heard the allegedly false testimony, there is no "reasonable probability" that "the outcome at trial would have been different." Reed, 767 F.3d at 1261; see also Zamora v. Dugger, 834 F.2d 956, 959 (11th Cir. 1987) (no prejudice from allegedly improper admission of evidence because "the state had abundant evidence . . . at its disposal with which to obtain a conviction").

Cyr's Giglio claim fails for the same reason. When a Giglio claim arises on collateral review, a petitioner must show that the alleged error "had substantial and injurious effect or influence in determining the jury's verdict." Rodriguez v. Sec'y, Fla. Dep't of Corr., 756 F.3d 1277, 1302 (11th Cir. 2014). This requires "more than a reasonable possibility that the error was harmful." Davis v. Ayala, 576 U.S. 257, 268 (2015). "Errors are harmless where there is significant corroborating evidence, or where evidence of guilt is overwhelming." Guzman v. Sec'y, Dep't of Corr., 663 F.3d 1336, 1355 (11th Cir. 2011) (citations omitted). As explained above, even setting aside the BOLO testimony, the prosecution presented "overwhelming" evidence of Cyr's guilt. Id. Therefore, Cyr cannot show that any alleged Giglio error prejudiced him. See Trepal v. Sec'y, Fla. Dep't of Corr., 684 F.3d 1088, 1117 (11th Cir. 2012) (rejecting Giglio claim for lack of prejudice because the "testimony that was challenged was just one narrow part of the State's strong case against [petitioner]").

### D.    Ground Five—Alleged Interference with Right to Testify

Cyr alleges that trial counsel provided ineffective assistance by misadvising him that "if he testified, the prosecutor could question him regarding the nature of his prior and pending offenses."   (Doc. 2 at 32.)   According to Cyr, this advice misstated Florida law, which "typically prevents the State from asking questions about the specifics of a criminal defendant's prior convictions."[4]   <u>Preston v. Sec'y, Dep't of Corr.</u>, 745 F. App'x 835, 838 (11th Cir. 2018).   Cyr claims that, but for counsel's "misinformation," he would have testified that "he was not involved in the robbery, but merely took the blame because he believed his girlfriend [<u>i.e.</u>, Crawford] was pregnant."   (Doc. 2 at 34, 36.)   Specifically, Cyr would have explained that, during his "conversation in the interview room" with Crawford, "she told him she was pregnant, she cried and pleaded with him to falsely confess to the robbery, and . . . she admitted she committed the robbery with another male."   (<u>Id.</u> at 36.)

Even under <u>de novo</u> review, this claim fails for lack of prejudice because Cyr cannot show a "reasonable probability that the results of the trial would have been different had [he] testified in his own defense."[5]   <u>Lee v. Culliver</u>, 300 F. App'x 689,

---

[4] "In attempting to impeach a witness (including a testifying defendant), the State may elicit information as to that witness's previous criminal convictions.   The questioning is limited to determining if the witness has previously been convicted of a crime, and if so, how many times.   If truthfully answered, the State can go no further."   <u>Sneed v. State</u>, 397 So. 2d 931, 933 (Fla. 5th DCA 1981).   But "a witness who falsely testifies about the number of his prior felony convictions may be impeached with certified copies of his convictions."   <u>Hall v. State</u>, 10 So. 3d 170, 171 (Fla. 5th DCA 2009).

[5] The postconviction court rejected Ground Five on the basis that counsel's performance was not "deficient."   (Doc. 10-1, Ex. DD, at 5.)   Because the postconviction court "did not address the prejudice prong," this element of the claim is subject to <u>de novo</u> review.   <u>Hayes v. Sec'y, Fla. Dep't of Corr.</u>, 10 F.4th 1203, 1210 (11th Cir. 2021).

691 (11th Cir. 2008).   At the time of trial, Cyr was an eleven-time convicted felon.

(Doc. 10-1, Ex. H, at 1.)   Thus, if he had testified, Cyr "would have been subject to

cross-examination and the jury would have learned that he had a criminal history,

which could have damaged his credibility and undermined his" defense.   Preston,

745 F. App'x at 839; see also Strozier v. Newsome, 871 F.2d 995, 999 (11th Cir.

1989) ("[Petitioner's] decision to testify resulted in the introduction of prior

convictions which may have had a substantial impact on the jury.").

    Moreover, even without his testimony, Cyr was able to present his defense that

he "took the blame because he believed [Crawford] was pregnant."   (Doc. 2 at 36.)

The jury learned that Cyr spoke privately with Crawford in the interview room for

fifteen minutes.   (Doc. 10-1, Ex. F, at 222.)   Before that conversation, Cyr told the

detective that Crawford had not "had her period yet," and that they were "kind of

worried about it."   (Id., Ex. AA, at 191.)   During closing argument, counsel used this

testimony to argue that Cyr did not "commit[ ] th[e] robbery":   "[T]hat 15 minutes

that [the detective] let them talk, where they whispered back and forth, that's when

she told him.   'I've done something wrong.   You need to save my bacon because I'm

carrying your child.'"   (Id., Ex. F, at 266–67.)   Therefore, counsel presented Cyr's

defense to the jury without his testimony.   And while Cyr could have elaborated on

the story by taking the stand, such testimony would have "come at a high price"—his

"extensive criminal record . . . would have come into evidence."   United States v.

Mullins, 315 F.3d 449, 456 (5th Cir. 2002).   Cyr's testimony "might have persuaded,"

but the Court cannot say "there is a reasonable probability that it would have done

so." Id. Even more, had Cyr not been truthful about his prior criminal record, it would have opened the door for the prosecution to examine him about the particulars of his prior convictions. See Hall v. State, 10 So. 3d 170, 171 (Fla. 5th DCA 2009).

### E.      Ground Six—Failure to Properly Advise on Plea Offer

Cyr alleges that trial counsel failed to "properly advise [him] regarding critical matters relevant to whether he should accept the [State's] 20-year plea offer." (Doc. 2 at 36.) According to Cyr, counsel failed to inform him that (1) he faced a maximum sentence of life imprisonment if convicted at trial, (2) "a life sentence meant no parole," and (3) he was "eligible for an enhanced sentence as" a habitual felony offender ("HFO"). (Id.) Cyr argues that, but for counsel's alleged errors, he "would have accepted the State's favorable plea offer." (Id. at 40–41.)

Trial counsel testified about these matters at the evidentiary hearing. (Doc. 10-1, Ex. CC.) Counsel stated that before the plea offer expired, Cyr "absolutely knew" he faced a maximum sentence of life imprisonment. (Id. at 143–44.) According to counsel, "that is elementary for representation of a client." (Id. at 144.) Likewise, counsel stated "with absolute certainty" that Cyr knew "from his arraignment forward" that he qualified as an HFO. (Id. at 141; see also id. at 143.) Finally, counsel testified that in "every case" involving a potential life sentence, he would tell his client that "in Florida, life means life," and that "we don't have parole . . . in Florida anymore." (Id. at 156.) Cyr did not testify at the hearing. (Id. at 2.)

The court rejected Cyr's ineffective assistance claim, finding that (1) Cyr "was well aware that if he did not accept the plea, he faced life in prison if found guilty at

trial," (2) counsel "discussed with [Cyr] that a life sentence means life," and (3) Cyr was aware of "the possibility of . . . receiving an enhanced sentence" as an HFO. (Id., Ex. AA, at 102; Ex. DD, at 5–6.)    Because these factual findings are "presumed to be correct," Cyr bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."    28 U.S.C. § 2254(e)(1); see also Ward, 592 F.3d at 1177 ("[W]e must presume the state court's factual findings to be correct unless the petitioner rebuts that presumption by clear and convincing evidence.").    Cyr has not done so.[6]    Thus, the court reasonably concluded that counsel did not misadvise Cyr about the plea offer.

### F.    Ground Seven—Waiver of Sentencing Hearing and PSI

Cyr faults trial counsel for advising him to waive his right to (1) a separate sentencing hearing and (2) the preparation of a presentence investigation report ("PSI").    (Doc. 2 at 41.)    A defendant subject to HFO sentencing is entitled to "a separate hearing at which [he] is accorded the rights of confrontation, cross-examination, and representation by counsel."    Lee v. State, 731 So. 2d 71, 73 (Fla.

---

[6] Counsel did not specifically testify that he informed Cyr that a life sentence meant life without parole.    Instead, counsel said that he provided such advice in "every" case involving a potential life sentence.    (Doc. 10-1, Ex. CC, at 156.)    "[A]n attorney's testimony about her regular practice and procedure . . . [is] sufficient to support a finding that the attorney acted consistently with that practice."    Nejad v. Att'y Gen., State of Ga., 830 F.3d 1280, 1294 n.7 (11th Cir. 2016); see also Dasher v. Att'y Gen., Fla., 574 F.3d 1310, 1314 (11th Cir. 2009) ("[P]rofessional people should be able to prove the manner in which they routinely handle matters that recur in their work, in order to show that they followed that routine in a particular instance." (internal quotation marks omitted)); Strickland v. Sec'y, Fla. Dep't of Corr., No. 3:15-cv-1251-TJC-JBT, 2018 WL 4407108, at *9 (M.D. Fla. Sept. 17, 2018) ("In reviewing claims of ineffective assistance of counsel where a trial counsel does not have specific memories otherwise, courts may rely on an attorney's representation that his or her conduct at the time was in conformance with his or her general practice or habit.").

2d DCA 1999).    He is also entitled to a PSI.    <u>Ortiz v. State</u>, 9 So. 3d 774, 775 (Fla. 4th DCA 2009).    But a defendant "may waive the procedural requirements contained in the habitual offender statute."    <u>Lee</u>, 731 So. 2d at 73; <u>see also</u> <u>Ortiz</u>, 9 So. 3d at 775 ("[T]he PSI requirement . . . can be waived, as can all of the procedural rights under the [HFO] statute.").

After the jury verdict, Cyr waived his right to a PSI and "a separate HFO hearing."    (Doc. 10-1, Ex. F, at 331–33, 335–36.)    Counsel explained that he had no basis to contest the HFO designation.    (<u>Id.</u> at 330–31.)    The court thus proceeded to sentencing.    After determining that Cyr qualified as an HFO, the court heard argument from the prosecution and Cyr's counsel.    (<u>Id.</u> at 334, 338–43.)    The prosecution recommended the statutory maximum of life imprisonment.    (<u>Id.</u> at 338–39.)    Counsel argued for "something much closer to" the mandatory minimum of twenty years' imprisonment.[7]    (<u>Id.</u> at 343.)    He noted that, other than decade-old burglary convictions, Cyr's "only other [prior] offenses" were two felony convictions for driving with a suspended license.    (<u>Id.</u> at 325, 328, 339.)    Counsel also argued that Cyr committed the robbery to feed his "significant addiction[ ] to prescription narcotics."    (<u>Id.</u> at 340.)    Next, counsel maintained that a life sentence would not be "best for society or for" Cyr because he was "a person that [could] redeem [himself] and become a productive member of society."    (<u>Id.</u> at 341.)    Finally, counsel emphasized that "nobody . . . [got] hurt" during the robbery, and that Cyr

_____

[7] Cyr faced a twenty-year mandatory minimum because he discharged a firearm during the robbery.    <u>Inmon v. State</u>, 932 So. 2d 518, 519 (Fla. 4th DCA 2006).

never "intended to hurt anyone."    (<u>Id.</u> at 342.)    Cyr's mother then briefly spoke, stating that the robbery happened "because of the drugs."    (<u>Id.</u> at 344.)

The court ultimately imposed a life sentence.    (<u>Id.</u> at 350–51.)    It "recognize[d] the mitigation [Cyr] presented," noting that Cyr "didn't apparently intend to hurt anybody," and that his criminal history was "certainly not the most egregious type of record."    (<u>Id.</u> at 344–45.)    The court nonetheless observed that Cyr had "gone from a pretty serious burglary to now maybe a more serious act of violence, a robbery with a firearm and discharging the firearm."    (<u>Id.</u> at 349.)    The court also considered the "total impact" on the "larger community"—"how [people would] react to someone going into a Seven Eleven or any type of business establishment carrying a shotgun and actually firing it."    (<u>Id.</u> at 350.)    Based on "all the factors that [it] indicated," the court found a life sentence "appropriate in this case."    (<u>Id.</u> at 351.)

Cyr now contends that counsel "misadvised" him into waiving his right to a separate sentencing hearing and a PSI.    (Doc. 2 at 42–43.)    According to Cyr, a "later sentencing hearing" would have allowed him to "present additional evidence and witnesses to discuss [his] long history of [drug] abuse, as well as other matters." (<u>Id.</u> at 43.)    Likewise, Cyr alleges that the "PSI interviewer would have interviewed all parties at length and could have been directed to speak to medical person[nel] about the legal drugs (prescription pain pills) that he was addicted to."    (<u>Id.</u> at 44–45.)    In Cyr's view, this "would have given the trial court a more specific recitation

of [his] history, as opposed to the conclusory broad stroke of information provided by defense counsel."   (Id. at 45.)

At the evidentiary hearing on this issue, counsel explained that "as a defense attorney," he requested a PSI only when "someone ha[d] a lack of record or a very minimum record."   (Doc. 10-1, Ex. CC, at 114.)   In his "experience," the probation office—the entity responsible for preparing PSIs—was "not real kind in presentence investigations, and they generally highlight[ed] things that [he did not] want highlighted."   (Id.)   Thus, as counsel put it, "a document prepared by probation about [his] client's criminal life [was] generally not good for them."   (Id.)

The postconviction court ultimately rejected Cyr's ineffective assistance claim for lack of prejudice.   (Id., Ex. DD, at 7.)   The court dismissed as "highly speculative" Cyr's assertion that "if he had a sentencing hearing," he could have "convince[d] the court to give him less than life" based on "his drug addiction [as] a mitigating factor."   (Id.)   As for the PSI, Cyr "fail[ed] to consider that although he could have been able to argue mitigating factors, this [would have] come[ ] at the expense of all the other negative things contained in the PSI and presented to the court."   (Id.)   Therefore, Cyr did not "establish that the resulting sentence would have been different if a PSI had been prepared and presented to the court."   (Id.)

This ruling was reasonable.   To show prejudice, Cyr "had to demonstrate that but for counsel's deficient performance, there [was] a reasonable probability he would have received a different sentence."   Hardwick v. Sec'y, Fla. Dep't of Corr., 803 F.3d 541, 556 (11th Cir. 2015) (internal quotation marks omitted).   "Applying

AEDPA to Strickland's prejudice standard, [this Court] must decide whether the state court's conclusion that [counsel's] performance . . . didn't prejudice [Cyr]—that there was no substantial likelihood of a different result—was so obviously wrong that its error lies beyond any possibility for fairminded disagreement." Mungin v. Sec'y, Fla. Dep't of Corr., 89 F.4th 1308, 1317 (11th Cir. 2024).

Cyr has not satisfied this demanding standard. He claims that, had he received a PSI and a separate sentencing hearing, he could have "present[ed] additional evidence and witnesses to discuss [his] long history of [drug] abuse, as well as other matters." (Doc. 2 at 43.) Cyr also alleges that the "PSI interviewer" could have spoken to "medical person[nel] about the legal drugs (prescription pain pills) that he was addicted to." (Id. at 44–45.) But counsel addressed Cyr's "significant addiction[ ] to prescription narcotics" at the sentencing hearing, and his mother told the trial court that the robbery happened "because of the drugs." (Doc. 10-1, Ex. F, at 340, 344.) Cyr's allegations about additional evidence of drug abuse are "too general and conclusory to be able [to] say that there is a reasonable probability that this evidence would have changed the outcome of [his] sentencing." Price v. Allen, 679 F.3d 1315, 1325 (11th Cir. 2012). He provides no specifics about the "additional evidence and witnesses," nor does he explain how further information about his addiction to "prescription pain pills" would have led to a different sentence. (Doc. 2 at 43–45.)

Moreover, the burden of establishing prejudice under Strickland "is particularly heavy where the petitioner alleges ineffective assistance in failing to

call a witness because often allegations of what a witness would have testified to are largely speculative." McKiver v. Sec'y, Fla. Dep't of Corr., 991 F.3d 1357, 1365 (11th Cir. 2021). For that reason, "a petitioner's own assertions about whether and how a witness would have testified are usually not enough to establish prejudice from the failure to . . . call that witness." Id. Cyr presents no evidence—through affidavits or otherwise—that his proposed witnesses would have testified in the manner he suggests. See United States v. Ashimi, 932 F.2d 643, 650 (7th Cir. 1991) ("[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or an affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective-assistance claim."). "Without such a showing, [Cyr] cannot demonstrate Strickland prejudice." Afshar v. Sec'y, Dep't of Corr., No. 2:24-cv-826-JES-NPM, 2025 WL 404629, at *5 (M.D. Fla. Feb. 5, 2025); see also Johnson v. Alabama, 256 F.3d 1156, 1187 (11th Cir. 2001) ("[Petitioner] offers only speculation that the missing witnesses would have been helpful. This kind of speculation is insufficient to carry the burden of a habeas corpus petitioner.").

**G.   Ground Eight—Failure to Properly Oppose Admission of Flight Evidence**

Cyr faults trial counsel for failing to "make the proper arguments against the admission" of evidence that he "fled when officers attempted to conduct a traffic stop [six] days after the robbery." (Doc. 2 at 45–46.) Before trial, the prosecution moved in limine to "introduce evidence of [Cyr's] flight as consciousness of guilt."

27

(Doc. 10-1, Ex. C, at 1.)   Under Florida law, "[e]vidence of flight is relevant to infer consciousness of guilt where there is a sufficient nexus between flight and the crime with which a defendant is charged."   Powell v. State, 908 So. 2d 1185, 1187 (Fla. 2d DCA 2005).   According to the prosecution, "the nexus between [Cyr's] flight and his desire to evade prosecution for robbery [was] strong."   (Doc. 10-1, Ex. C, at 3.)

Before voir dire began, counsel objected to the use of Cyr's flight as "evidence of guilt in this case."[8]   (Id., Ex. E, at 12.)   In counsel's view, "there [was] no nexus" between the robbery and Cyr's flight.   (Id.)   Counsel argued that Cyr fled, not because of the robbery, but "because [he and Crawford] had an expired tag and no insurance."   (Id. at 11.)   Moreover, according to counsel, Cyr was not "aware" that the robbery investigation was "focused on him."   (Id.)   The court granted the prosecution's motion in limine, finding that "there [was] a connection [between the robbery and Cyr's flight], . . . it [was] not too remote[,] and it [was] relevant."   (Id. at 12.)

Cyr contends that counsel's "attempt to exclude this evidence of . . . flight from the vehicle . . . was deficient," "resulting in its erroneous and prejudicial admission."   (Doc. 2 at 46.)   He argues that he fled "due to expired tags, lack of insurance, and traffic arrest warrants," and that "there was no evidence that [he] was fleeing because of the charged offense."   (Id. at 47 (emphasis omitted).)

---

[8]  Counsel clarified that he was "not arguing that the evidence of [ ] Cyr's flight from the vehicle . . . should be inadmissible."   (Doc. 10-1, Ex. E, at 11.)   Instead, he opposed the prosecution's request to "argue that [Cyr's flight was] evidence of his guilt" for the robbery. (Id. at 11–12.)

According to Cyr, counsel's "conduct" was "deficient" because he "presented no caselaw to support his argument." (Id. at 48.)

The postconviction court reasonably rejected this claim for lack of "prejudice." (Doc. 10-1, Ex. AA, at 103.)   Cyr argues that his flight was inadmissible to prove consciousness of guilt because "[t]here was simply no nexus to show [he] fled from this robbery—the charged offense." (Doc. 2 at 48.)   But counsel made the same argument before the trial court, claiming that "there [was] no nexus" between the robbery and Cyr's flight, and that he fled because he and Crawford had "an expired tag" and "no insurance." (Doc. 10-1, Ex. C, at 11–12.)   Cyr faults counsel for "present[ing] no caselaw," but he does not cite any cases that would have required exclusion of the evidence. (Doc. 2 at 48.)   Nor does he point to any additional arguments that would have led to a different outcome.   Thus, a fairminded jurist could find no "reasonable probability" that the flight evidence would have been excluded had counsel acted differently.   Reed, 767 F.3d at 1261.

Moreover, even if the court had barred the use of flight evidence to infer consciousness of guilt, Cyr still could not show the requisite prejudice.   See Kimmelman v. Morrison, 477 U.S. 365, 375 (1986) (petitioner must show a "reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice").   Even aside from Cyr's flight from law enforcement, the prosecution presented "overwhelming evidence of [his] guilt." Bates, 768 F.3d at 1300 n.9.   As set forth above, that evidence included Cyr's videotaped confession, Crawford's detailed account of Cyr's

role in the robbery, and the physical evidence linking Cyr to the crime.   (Doc. 10-2, Ex. F, at 32, 34, 38–40, 152–69; Ex. AA, at 277–78.)

### H.    Ground Ten—Failure to Object to "Black Ski Mask Entering the Deliberation Room"

Cyr argues that trial counsel was deficient "for failing to object when a black ski mask purportedly worn by [him during the robbery] improperly entered the deliberation room with the jury."   (Doc. 2 at 52–53.)   At trial, a forensic specialist with the Hernando County Sheriff's Office testified that she found "a black ski mask in the car" Cyr was driving when he fled from law enforcement.   (Doc. 10-1, Ex. F, at 100, 115.)   The ski mask was neither admitted into evidence nor included on the court-prepared exhibit list.   (Id., Ex. LL.)   Cyr alleges, however, that a "clear plastic bag containing the mask was placed upon a cart" that was "wheeled into the deliberation room with the jury."   (Doc. 2 at 54.)   Thus, according to Cyr, "the jury improperly considered the black ski mask to convict [him] because it was never admitted into evidence."   (Id.)

The postconviction court rejected this claim, finding that Cyr "failed to show any prejudice."   (Doc. 10-1, Ex. AA, at 96.)   The court explained that "nothing in the record support[ed] [that] the mask was ever physically produced in order to accident[ally] be brought into the jury deliberation room."   (Id. at 95.)   Moreover, the "evidence list" did not "list the ski mask for either identification or evidence." (Id. at 95–96.)   Because the mask was not included "on the list, either for identification or evidence," the court held that the record did "not support that the item was ever proffered to the juror[s] and in a spot to be accidentally brought into

the deliberation room." (Id. at 96.)

     This ruling was reasonable. The court found no evidence that the ski mask

entered the deliberation room. (Id.) That "factual finding" is presumed correct

unless Cyr rebuts it "by clear and convincing evidence." Ward, 592 F.3d at 1177;

see also Jones v. Walker, 540 F.3d 1277, 1288 n.5 (11th Cir. 2008) ("Federal habeas

courts generally defer to the factual findings of state courts, presuming the facts to

be correct unless they are rebutted by clear and convincing evidence."). Cyr has

not done so. As the court correctly explained, the "evidence list" did not include

"the ski mask for either identification or evidence." (Doc. 10-1, Ex. AA, at 95–96.)

Thus, "nothing in the record support[ed] [that] the mask was ever physically

produced in order to accident[ally] be brought into the jury deliberation room." (Id.

at 95.) Cyr presents no evidence—let alone "clear and convincing evidence"—to

show that this factual finding was incorrect. Ward, 592 F.3d at 1177. Instead, he

"merely repeats the same allegations the state postconviction court already"

rejected. Perri v. Dixon, No. 22-cv-14109-RAR, 2022 WL 5170398, at *9 (S.D. Fla.

Oct. 5, 2022). That is insufficient to rebut the presumption of correctness. See

Reed v. Sec'y, Dep't of Corr., No. 8:08-cv-514-JSM-TGW, 2009 WL 2407747, at *5

(M.D. Fla. Aug. 3, 2009) (petitioner failed to overcome presumption of correctness

because he "simply repeated the allegations made to the state court"). Thus, the

postconviction court reasonably concluded that Cyr suffered no prejudice because

the ski mask never entered the deliberation room.

## I.    Ground Eleven—Failure to Retain Experts

Cyr argues that trial counsel provided ineffective assistance by "failing to

have forensic tests performed on several pieces of evidence relied on by the State." (Doc. 2 at 56.)    According to Cyr, counsel should have hired an expert to perform a DNA test on the Dickies shirt worn by the robber.    (Doc. 10-1, Ex. Y, at 12.)    This test allegedly "would have returned with negative results for [Cyr's] DNA."    (Id. at 13.)    In addition, Cyr faults counsel for not hiring an expert to conduct "[g]unpowder residue test[s]" on the batting gloves, the duffel bag, and the shotgun. (Doc. 2 at 58–60.)    These tests allegedly "would have returned with negative results" as well.    (Doc. 10-1, Ex. Y, at 14–16.)    Finally, Cyr says that counsel should have hired an expert to determine whether the "shotgun pellets" at the scene of the robbery matched the shotgun recovered from the elementary school. (Doc. 2 at 60.)    Cyr claims that "testing of these items . . . would have demonstrated" that the pellets did not come from the shotgun.    (Id. at 61; see also Doc. 10-1, Ex. Y, at 18.)

The postconviction court reasonably concluded that Cyr failed to show deficient performance.    (Doc. 10-1, Ex. AA, at 90–94.)    Cyr never identified any experts who could have provided the testimony he describes.    Nor did he show that a DNA or forensic expert "had actually reviewed the evidence in his case."    Finch v. Sec'y, Dep't of Corr., 643 F. App'x 848, 852 (11th Cir. 2016).    "Without some specificity as to the proposed expert[s'] testimony, any assertion that [experts] would testify consistently with [Cyr's] claims [was] mere speculation and [did] not entitle him to [ ] relief."    Id.    Thus, a reasonable jurist could conclude that Cyr's

speculative allegations were insufficient to establish deficient performance.[9]  See, e.g., Holt v. Sec'y, Fla. Dep't of Corr., 489 F. App'x 336, 338 (11th Cir. 2012) (state court reasonably rejected ineffective assistance claim based on failure to retain expert because "[i]t [was] speculative that an expert witness would in fact have testified" favorably to the defense); Jimenez v. Sec'y, Dep't of Corr., No. 8:19-cv-684-MSS-AEP, 2021 WL 5416150, at *9 (M.D. Fla. Nov. 19, 2021) ("[I]n his post-conviction motion, [petitioner] neither identified an expert who could have testified [favorably to the defense] nor presented an affidavit or testimony to substantiate that testimony.   Because [petitioner's] ineffective assistance of counsel claim was speculative, the state court did not unreasonably deny the claim.").

## J.    Ground Twelve—Failure to Object to Admission of Shotgun

Cyr faults trial counsel for failing to "object to the introduction of the shotgun recovered from the bushes of the [elementary school]."   (Doc. 2 at 61.)   According to Cyr, the shotgun was inadmissible because he "could not have" left it in the bushes.   (Id.)   He points out that, although he "was arrested with shotgun shells on his person," the officers who chased him did not see him holding "any gun."   (Id. at 63.)   Cyr acknowledges that Crawford, his co-defendant, testified that he left the car carrying a shotgun, but he describes her testimony as "clearly suspect."   (Id.)   Cyr thus contends that counsel "should have moved to exclude" the shotgun "from trial."   (Id.)

---

[9] The postconviction court did not rely on this reasoning to reject Cyr's claim, but a federal habeas court is "not limited by the particular justifications the state court provided for its decision, and . . . may consider additional rationales that support the state court's determination."   Davis v. Comm'r, Ala. Dep't of Corr., 120 F.4th 768, 789 (11th Cir. 2024).

The postconviction court reasonably concluded that any such motion would have been unsuccessful.   (Doc. 10-1, Ex. AA, at 95.)   "It is well-settled that in order for evidence of a firearm to be admissible as relevant in a criminal trial, the State must show a sufficient link between the weapon and the crime."   Metayer v. State, 89 So. 3d 1003, 1007 (Fla. 4th DCA 2012).   Here, "there was an adequate nexus between the [shotgun] found in [in the bushes] and the [robbery] to establish relevancy."   Holloway v. State, 114 So. 3d 296, 297 (Fla. 4th DCA 2013).   Crawford testified that after the car chase ended, Cyr grabbed his shotgun and ran toward an elementary school.   (Doc. 10-1, Ex. F, at 167, 171–72.)   According to Crawford, Cyr had used the shotgun during the robbery.   (Id. at 162.)   Officers arrested Cyr outside the elementary school, and they found a shotgun in some nearby bushes.   (Id. at 96–97, 105.)   At trial, the victim viewed the shotgun and identified it as the weapon that "was held to [her] head."   (Id. at 32.)   She explained that she recognized the wooden "carving" on the shotgun.   (Id. at 48.)   Taken together, this evidence was sufficient to establish that the shotgun found in the bushes was the shotgun Cyr used during the robbery.   "[I]t was the jury's province to weigh [this] physical evidence in relation to the testimony at trial."[10]   Gartner v. State, 118 So. 3d 273, 277 (Fla. 5th DCA 2013).

---

[10] The postconviction court relied on a different rationale to reject Cyr's claim, ruling that any motion to exclude the shotgun would have failed because Cyr lacked "standing" to raise such a challenge.   (Doc. 10-1, Ex. AA, at 94–95.)   Cyr argues that this reasoning was mistaken.   (Doc. 2 at 62.)   As noted above, a federal habeas court is "not limited by the particular justifications the state court provided for its decision, and . . . may consider additional rationales that support the state court's determination."   Davis, 120 F.4th at 789.   Regardless of whether the postconviction court was correct in its standing ruling, Cyr is not entitled to relief because the shotgun was plainly admissible.

Because counsel had no basis to seek exclusion of the shotgun, he was not

deficient for failing to raise Cyr's proposed objection.   See Pinkney v. Sec'y, DOC,

876 F.3d 1290, 1297 (11th Cir. 2017) ("[A]n attorney will not be held to have

performed deficiently for failing to perform a futile act, one that would not have

gotten his client any relief.").

### K.    Ground Thirteen—Failure to Introduce Walmart Receipt and Surveillance Footage

As noted above, Cyr wore a black ski mask when he robbed the gas station

convenience store on October 3, 2010.   (Doc. 10-1, Ex. F, at 30.)   He contends that

trial counsel should have introduced a Walmart receipt from October 9, 2010, as

well as Walmart surveillance footage from the same date.   (Doc. 2 at 64.)

According to Cyr, both pieces of evidence "would have proven that [he] was not in

possession" of the ski mask during the "October 3, 2010 robbery, since it was bought

[at Walmart] on October 9, 2010."   (Doc. 10-1, Ex. Y, at 25.)   The surveillance

footage was not presented at trial, nor is it anywhere else in the record.   A forensic

analyst with the Hernando County Sheriff's Office testified at trial about the

receipt.   (Id., Ex. F, at 113.)   She found it in the car Cyr was driving when he fled

from the police.   (Id.)   The receipt was dated October 9, 2010, and it listed a

purchase of an item titled "Black Rich."   (Id.)   The analyst indicated that the

receipt "did not say ski cap or anything [else]."   (Id.)   The receipt itself was not

admitted at trial.

Cyr contends that counsel should have introduced the receipt and

surveillance footage to prove that he "was not in possession of the . . . ski mask at

the time of the robbery because it was purchased afterwards." (Doc. 2 at 64.)   He

also faults counsel for not impeaching Crawford, Cyr's co-defendant, "with the

receipt and video surveillance." (<u>Id.</u>)   Counsel allegedly could have used this

evidence to rebut Crawford's testimony that she and Cyr "prepared for the robbery"

by buying a ski mask. (<u>Id.</u>)

     The postconviction court held that Cyr "failed to prove trial counsel's

performance was deficient." (Doc. 10-2, Ex. AA, at 97.)   The court noted that the

receipt had little "evidentiary value" because it did not "clearly identify the item

being purchased." (<u>Id.</u> at 98.)   Moreover, even if Cyr had bought a ski mask on

October 9, "this would not prove a different mask was not purchased" before the

robbery. (<u>Id.</u> at 97.)   In other words, "introducing the video surveillance and

receipt into evidence would not prove that it was impossible for [Cyr] to have

previously purchased the mask." (<u>Id.</u>)

     The rejection of this claim was reasonable.   Cyr cannot "show that no

reasonable jurist could find that his counsel's performance fell within the wide

range of reasonable professional conduct." <u>Franks</u>, 975 F.3d at 1176.   According to

Cyr, the receipt and surveillance footage would have established that he bought the

ski mask on October 9, six days after the robbery. (Doc. 10-1, Ex. Y, at 25.)   But,

as the postconviction court explained, the receipt had little "evidentiary value"

because it did not "clearly identify the item being purchased." (<u>Id.</u>, Ex. AA, at 98.)

And Cyr offers no evidence that the surveillance footage would have shown him

buying the ski mask on October 9.   The record thus does not support Cyr's

assertion that the receipt and surveillance footage would have proven he "bought [the ski mask] on October 9." (Id., Ex. Y, at 25.)   Regardless, even if Cyr had bought a ski mask on that date, "this would not prove a different mask was not purchased" before the robbery.   (Id., Ex. AA, at 97.)   Therefore, Cyr fails to rebut the "strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000).

## L.    Ground Fourteen—Failure to Seek Mistrial Based on Victim Contact with Juror

Cyr argues that trial counsel should have moved for a mistrial "after a juror came forward and informed the court [that he] knew" the robbery victim.   (Doc. 2 at 65.)   After opening statements but before the first witness took the stand, one of the jurors approached the bench to inform the court that he knew the victim.   (Doc. 10-1, Ex. F, at 21.)   The juror stated that approximately ten years ago, he and the victim "worked for the same employer."   (Id.)   Since then, he had "run into" the victim "from time to time, and it was basically hello, how are you, and that [was] about the extent of it."   (Id.)   According to the juror, he did not realize he knew the victim until "we were sitting out here waiting [during the lunch break], okay, she had come by and she said, 'Hello, Carl, how are you?'   And I [said], 'Hello,' and that's—that's how I knew.   And she had mentioned the fact that she was a witness."   (Id. at 22–23.)   The juror claimed he could "still be fair and impartial" in the case, but defense counsel requested that he be excused.   (Id. at 22, 24–25.)

The court "excuse[d] [the juror] . . . from serving on the case," and the evidentiary portion of the trial began.    (<u>Id.</u> at 26.)

Cyr says that counsel was deficient for failing to seek a mistrial based on the juror's interaction with the victim.    (Doc. 2 at 65.)    According to Cyr, the "colloquy with the juror clearly suggested other jurors were present during this exchange." (<u>Id.</u> at 66.)    The "conversation and camaraderie with the victim" allegedly exerted "undue influence on the other jurors," making it "impossible to find that the remaining jurors could still be fair and impartial."    (Doc. 10-1, Ex. Y, at 29–30.)

The postconviction court rejected this claim because Cyr "failed to show any prejudice."    (<u>Id.</u>, Ex. AA, at 100.)    The court pointed out that the juror "was dismissed before the first witness even took the stand and he had no influence on the other jurors during the deliberations."    (<u>Id.</u> at 99.)    Moreover, Cyr did "not allege, and nothing in the record support[ed,] that [the juror] spoke with other jurors or in any way influenced the other jurors by portraying the witness as 'his friend.'"    (<u>Id.</u>)

This ruling was reasonable.    A fairminded jurist could conclude that Cyr suffered no prejudice because a mistrial would not have been granted.    "To protect the right to an impartial jury, the Supreme Court has recognized that '[d]ue process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen.'"    <u>United States v. Siegelman</u>, 640 F.3d 1159, 1182 (11th Cir. 2011) (quoting <u>Smith v. Phillips</u>, 455 U.S. 209, 217

(1982)).   "A juror's exposure to extraneous material or influence requires a new

trial if the exposure poses a reasonable possibility of prejudice to the defendant."

United States v. Khanani, 502 F.3d 1281, 1291 (11th Cir. 2007) (internal quotation

marks omitted).   Thus, a mistrial is not required if the extraneous influence was

"harmless to the defendant."   United States v. Ronda, 455 F.3d 1273, 1299 (11th

Cir. 2006).

There is no "reasonable possibility" that Cyr suffered prejudice from the

juror's brief contact with the victim.   Khanani, 502 F.3d at 1291.   Before any

witness took the stand, the juror and the victim exchanged greetings, and the victim

"mentioned the fact that she was a witness."   (Doc. 10-1, Ex. F, at 22–23.)   The

court excused the juror before the evidentiary portion of the trial began.   (Id. at 26.)

Even assuming the other jurors overheard the conversation, there is no basis to

conclude that it "influence[d] [their] decision" in the case.   Martin v. McDonough,

200 F. App'x 860, 863 (11th Cir. 2006).   Nothing in the record suggests that the

remaining jurors heard anything substantive about the case during the

conversation.   Nor is there any evidence that the brief interaction had an "undue

influence" on the remaining jurors.   (Doc. 10-1, Ex. Y, at 30.)   Thus, the interaction

was "harmless to [Cyr]," and counsel had no reasonable basis to seek a mistrial.

Ronda, 455 F.3d at 1299.

### M.   Ground Fifteen—Failure to Prevent Jury from Receiving Unredacted Interview

Cyr argues that trial counsel was ineffective for failing to prevent the jury

from receiving an "unredacted version" of his interview when it began deliberations.

(Doc. 2 at 66.)   The prosecution introduced a redacted version of the interview, which omitted references to the other robberies Cyr was accused of committing. (Doc. 10-1, Ex. F, at 193, 202.)   The redacted version was played for the jury after being admitted into evidence.   (Id. at 202.)   During a bench conference, the parties also provided the court with an unredacted version of the interview "for purposes of the record."   (Id. at 194.)   Counsel explained that the unredacted version would "be part of the record, but not an item of evidence."   (Id. at 195.)   In accord with this procedure, the court's exhibit list included both the unredacted and redacted versions, but the entry for the unredacted version contained the following note: "TO REMAIN IN EVIDENCE AS PART OF THE RECORD ONLY."   (Id., Ex. LL, at 2.)   In addition, the entry for the redacted version contained an exhibit number, while the entry for the unredacted version contained no exhibit number.   (Id.)

Cyr now alleges that "both the redacted and the unredacted version of the interrogation [were] provided to the jury when they deliberated."   (Doc. 2 at 66.) In support, he notes that the court's exhibit list included a signed acknowledgment from the parties that "THE ABOVE-REFERENCED EVIDENCE HAS BEEN PROVIDED TO THE JURY DURING DELIBERATION."   (Doc. 10-1, Ex. LL, at 1.) According to Cyr, counsel was ineffective for failing to ensure that the jury did not receive the unredacted version of the interview.   (Doc. 2 at 66.)

As Cyr correctly concedes, this claim is procedurally defaulted because he failed to raise it in state court.   (Id. at 67.)   Cyr argues that Martinez excuses the default because his assertion of ineffective assistance is "substantial."   (Id.)   The

Court disagrees.   "Courts must indulge [the] strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment."   Chandler, 218 F.3d at 1314.   "[I]n a habeas action the burden is on the petitioner to establish his claim of ineffective assistance of counsel."   Simmons v. Wainwright, 710 F.2d 796, 798 (11th Cir. 1983).   Thus, "[a]n ambiguous or silent record is not sufficient to disprove the strong and continuing presumption" of effective representation.   Williams v. Allen, 598 F.3d 778, 794 (11th Cir. 2010); see also Putman v. Head, 268 F.3d 1223, 1243 (11th Cir. 2001) ("If the record is incomplete or unclear about counsel's actions, then it is presumed that counsel exercised reasonable professional judgment.").

Cyr—who "has the burden of proof and persuasion"—fails to establish that the jury received the unredacted version of the interview.   Gissendaner v. Seaboldt, 735 F.3d 1311, 1331 (11th Cir. 2013).   Only the redacted version was played for the jury and admitted into evidence.   (Doc. 10-1, Ex. F, at 202.)   The parties provided the court with the unredacted version to "be part of the record, but not an item of evidence."   (Id. at 195.)   The court's exhibit list reflected this procedure.   (Id., Ex. LL.)   It included both versions of the interview, but only the unredacted version contained the following note:   "TO REMAIN IN EVIDENCE AS PART OF THE RECORD ONLY."   (Id. at 2.)   To be sure, the exhibit list also stated that the evidence had been "provided to the jury during deliberation."   (Id. at 1.)   But this does not prove that the jury received the unredacted interview, which (according to the list) would "REMAIN IN EVIDENCE AS PART OF THE RECORD ONLY."

(Id. at 2.)   Regardless, to the extent "the record is incomplete or unclear about" the matter, "it is presumed that counsel exercised reasonable professional judgment." Putman, 268 F.3d at 1243.   Because Cyr fails to rebut the "strong presumption that counsel's performance was reasonable," his ineffective assistance claim is not substantial under Martinez.   Chandler, 218 F.3d at 1314.

## N.    Ground Sixteen—Cumulative Error

Lastly, Cyr argues that "the cumulative prejudicial effect of counsel's acts and omissions deprived [him] of his right to a fair trial and his right to effective assistance of counsel."   (Doc. 2 at 68.)   "Under the cumulativeerror doctrine, a sufficient agglomeration of otherwise harmless or nonreversible errors can warrant reversal if their aggregate effect is to deprive the defendant of a fair trial." Insignares v. Sec'y, Fla. Dep't of Corr., 755 F.3d 1273, 1284 (11th Cir. 2014).   A cumulative error claim "must fail," however, where none of the "individual claims of error" has "any merit."   Morris v. Sec'y, Dep't of Corr., 677 F.3d 1117, 1132 (11th Cir. 2012).   Cyr is not entitled to relief on any individual claim of error.   Thus, his cumulative error claim necessarily fails.

## IV.    Conclusion

Based on the foregoing, Cyr is not entitled to relief on any habeas claim presented here.

Accordingly, it is **ORDERED** that:

1.    The 28 U.S.C. § 2254 petition filed by Robert Cyr is **DENIED**.

2.     The Clerk is **DIRECTED** to enter judgment in favor of Respondent and against Cyr, deny any pending motions as moot, terminate any deadlines, and close this case.

### Certificate of Appealability[11]

A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition.   28 U.S.C. § 2253(c)(1).   Rather, a district court or circuit judge must first issue a certificate of appealability ("COA"). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   To make this substantial showing, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong,"   Slack v. McDaniel, 529 U.S. 473, 484 (2000), or that "the issues presented are adequate to deserve encouragement to proceed further."   Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).   When, as here, the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."   Slack, 529 U.S. at 484.

Upon consideration of the record, the Court declines to issue a COA. Because Cyr is not entitled to a COA, he is not entitled to appeal in forma pauperis.

---

[11]  Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

**DONE AND ORDERED** in Tampa, Florida on January 5, 2026.

**JOHN L. BADALAMENTI**
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record

44